IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DONNA E. JONES,<br><br>    Plaintiff,<br><br><br><br>vs.<br><br><br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>    Defendant. | ORDER DENYING MOTION TO REVERSE OR REMAND THE COMMISSIONERS' DECISION<br><br><br><br><br><br>Case No. 2:06-CV-00200 PGC |

      This is an appeal from the denial of plaintiff Donna E. Jones' application for disability benefits under the Social Security Act. Ms. Jones moves to reverse or remand the Administrative Law Judge's decision that her back and mental impairments do not qualify her as disabled. In particular, Ms. Jones contends: (1) the ALJ's determination that her mental impairments were not severe is not supported by substantial evidence; (2) the ALJ's conclusion that her back impairments do not meet or equal Listing 1.04(A) is not supported by substantial evidence; (3) the ALJ did not give proper weight to her treating physician's opinion that she is disabled and unable to work; (4) the ALJ's determination that her testimony is not credible is not supported by substantial evidence; and (5) the ALJ's determination that she can perform a limited range of sedentary, unskilled work is contrary to regulations and not supported by substantial evidence.

Because the court concludes that substantial evidence supports the decision that Ms. Jones is not disabled, the court affirms the ALJ's decision.

## BACKGROUND

Mr. Jones filed an application for disability insurance benefits on January 8, 2003, alleging disability since January 4, 2002, based upon a back injury she received on or about January 3, 2002, and mental impairments. At the time of her application, Ms. Jones was forty-five. She has a bachelor of science degree. Her past work includes employment as a grocery and gas station clerk, a physical trainer of disabled adults, a waitress, and a bar tender. Ms. Jones' relevant medical history is detailed in the discussion section below.

After a hearing, the ALJ denied Ms. Jones' application for disability benefits, finding that although her back impairments were severe she was not disabled because: (1) her impairments did not meet or equal the relevant listings; (2) she could perform a range of unskilled, sedentary work; and (3) that such jobs were available in significant numbers in the national economy. On January 13, 2006, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision. On March 9, 2006, Ms. Jones filed this action, seeking a reversal of the decision or a remand for additional findings.

**ANALYSIS**

The court reviews the ALJ's decision to ascertain whether it is supported by substantial evidence in the record and whether correct legal standards were applied.[1]  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  The court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."[3]  However, the court does not "reweigh the evidence or substitute [its] judgment for the [ALJ's]."[4]

The Social Security Administration is authorized to pay disability insurance benefits to persons who have a "disability," as defined by the Social Security Act.  A person is disabled only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[5]

To determine whether a claimant is disabled, the Commissioner has developed a five-step

---

[1] *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *see also Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).

[2] *Grogan*, 399 F.3d at 1261.

[3] *Id.* at 1262.

[4] *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

[5] 42 U.S.C. § 423(d)(2)(A).

evaluation.[6]  The claimant bears the burden of proof at steps one through four, and if the claimant fails to meet the burden of proof, consideration of subsequent steps is unnecessary.[7]

First, the fact finder inquires as to whether the claimant is engaged in substantial gainful activity.[8]  If not, the second step requires the fact finder to determine whether the claimant has a medically severe impairment or combination of impairments.[9]  If the claimant does not have a severe impairment, step three entails determining whether the impairment is equivalent to one of a number of listed impairments the Commissioner acknowledges are so severe as to preclude substantial gainful activity.[10]  If there is no such equivalency, the claimant must show at step four that the impairment prevents the claimant from performing work he or she has performed in the past.[11]  Finally, if the claimant reaches step five, the Commissioner bears the burden of proving that the claimant has the residual functional capacity to perform other work in the national economy in view of age, education, and work experience.[12]

In this case, the ALJ found that Ms. Jones had not engaged in any substantial gainful activity since the alleged date of onset and therefore met step one.  At step two, the ALJ found

---

[6]20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).

[7]*Id*. at 750.

[8]20 C.F.R. § 404.1520

[9]*Id*.

[10]*Id*.

[11]*Id*.

[12]*Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

that Ms. Jones had medically determinable severe impairments: obesity, moderate degenerative disc disease with moderate spinal stenosis, and a left L5 pedical fracture. The ALJ also found that her mental impairments – post-traumatic stress disorder, major depressive disorder by history, and a generalized pain disordered associated with both psychological factors and general medical condition – were not severe. At step three, the ALJ determined that the medical evidence did not show that Ms. Jones' impairments met or equaled individually or in combination the relevant listings – 12.06 (anxiety-related disorders); 12.04 (affective disorders); or 1.04 (disorders of the spine). In regard to Ms. Jones' spine disorder, the ALJ specifically found no documented positive straight leg test or motor loss associated with muscle weakness or atrophy required by the listing. At step four, the ALJ determined that Ms. Jones had a residual functional capacity for a restricted range of unskilled, sedentary work activities but could not perform her past work. However, at step five, the ALJ found that based on Ms. Jones' RFC and testimony of a vocational expert that Ms. Jones is capable of performing a restricted range of range of sedentary work as defined in 20 C.F.R. § 404.1567 and that such work exists in significant numbers in the national economy.

  Ms. Jones contends that the ALJ's conclusion that she can perform a restricted range of sedentary jobs despite her impairments is not supported by substantial evidence. Specifically, she contends that (1) the ALJ's determination that her mental impairments were not severe at step two is not supported by substantial evidence; (2) that the ALJ's conclusion that her back impairments do not meet or equal Listing 1.04(A) is not supported by substantial evidence; (3) the ALJ did not give proper weight to her treating physician's opinion that she is disabled and

unable to work; (4) the ALJ's determination that her testimony is not credible is not supported by substantial evidence; and (5) at step five, the ALJ's determination that she can perform a restricted range of sedentary, unskilled work is contrary to regulations and not supported by substantial evidence. The court considers each contention in turn.

I.  **The ALJ's Determination that Ms. Jones' Mental Impairments Were Not Severe is Supported by Substantial Evidence.**

The Tenth Circuit has stated that to establish that an impairment is severe, a claimant must make a "'de minimus' showing of impairment."[13] "However, the claimant must show more than the mere presence of a condition or aliment."[14] "Presumptively, if the medical severity of a claimant's impairments [or combination of impairments] is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in substantial work activity."[15] In April 2003, Dr. Mooney diagnosed Ms. Jones with post-traumatic stress disorder, major depressive disorder by history, and generalized pain disorder associated with both psychological factors and a general medical condition. However, such diagnosis alone is not sufficient under Tenth Circuit law to show a severe impairment.[16] Moreover, Dr. Egan, a state agency consulting examiner, found that these diagnoses were not severe. The court therefore concludes that Ms. Jones has not made the de minimus showing required at step two.

---

[13] *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

[14] *Id.*

[15] *Id.*

[16] *See id.*

Ms. Jones also contends that the ALJ erred by not making the pain and functional assessment required by SSA rulings when determining that her mental impairments were not severe. In relevant part, Ruling 96-3 provides that at step two

> a determination whether an impairment(s) is severe requires an assessment of the functionally limiting effects of an impairment(s), symptom-related limitations and restrictions must be considered at this step of the sequential evaluation process, provided that the individual has a medically determinable impairment(s) that could reasonably expected to produce the symptoms. If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe.

In this case, although the ALJ's finding that Ms. Jones' mental impairments are not severe is conclusory, Ms. Jones points to no record evidence that shows that her mental impairments caused more-than-minimal limitations. Rather, the medical evidence shows that Ms. Jones' mental impairments had only minimal effect. For example, Dr. Burgoyne opined that her psychological problems had not increased her physical impairments. The court therefore concludes that the ALJ's determination at step two that Ms. Jones' mental impairments were not severe is supported by substantial evidence.

**II.     The ALJ's Determination that Ms. Jones' Back Impairments Did Not Meet or Equal Listing 1.04(A) is Supported by Substantial Evidence.**

Ms. Jones contends that because the record includes evidence showing that her back impairments meet or equal Listing 1.04(A) the ALJ's decision is not supported by substantial evidence. In relevant, part Listing 1.04 requires:

> evidence of spine disorder (herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degnerative disc disease, facet arthritis, vertebral fracture)

resulting in compromise of a nerve root (including cauda equina) or the spinal cord. With:

A.  Evidence of *nerve root compression* characterized by neuro anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

On its face, this listing requires (1) a showing of a spine disorder; (2) evidence of nerve root compression; (3) characterized by neuro anatomic distribution of pain, limitation of motion of the spine, motor loss (muscle weakness or atrophy with associated muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower back, postive straight leg testing.  The ALJ concluded the record medical evidence did not document evidence of a positive straight-leg test or motor loss associated with muscle weakness or atrophy.  The ALJ also stated that the evidence did not establish impairments that met or equaled singly or in combination an impairment listed in appendix 1.

The parties do not dispute that Ms. Jones has a spine disorder.  Ms. Jones argues, among other things, that the objective medial evidence shows that she has also has spondyloisthesis (which is compromise of the nerve root), and, contrary to the ALJ's finding at step two, the compromise is characterized by postive straight leg tests along with muscle weakness and atrophy.  The Commissioner responds that the record contains no evidence of nerve root compression.  The Commissioner concedes, however, that as detailed in Ms. Jones' brief the evidence indicates that she *may* have met Listing 1.04(A).  But the record evidence *also* shows that she *did not* meet the listing.  What appears at issue is whether the ALJ's finding that Ms. Jones did not have nerve root compression characterized by muscle weakness and positive

straight leg tests is supported by substantial evidence.

In reaching his conclusion at step three, the ALJ notes that he relied upon the opinions of state agency medical examining consultants. In October 2003, one of those consultants, Dr. Nosler found that Ms. Jones had no palpable muscle spasms and had leg muscle strength at 5/5. In addition, Dr. Nosler opined that neurologic tests did not elicit significant evidence of nerve damage and that her range of motion was normal except for forward flexon limited to 80 degrees. She also had normal response to pin prick and light touch and her reflexes were symmetric. Contrary to the ALJ's finding of no postive straight leg tests, however, Dr. Nosler found that she had a positive straight leg test on the left.

Standing alone, this finding at step three would not suffice. However, this court may also consider the ALJ's findings at steps four and five in determining whether the ALJ's findings at step three are supported by substantial evidence.[17] At steps four and five, the ALJ noted that he gave more weight to the opinions of treating physicians with the most lengthy relationship and more weight to the opinions of treating examiners than consulting examiners. The ALJ then made additional findings that support his conclusion that the record does not document muscle weakness. In September 2002, Dr. Braun, Ms. Jones' treating physician noted that when distracted Ms. Jones had at least 4/5 muscle strength. And in August 2004, a workers' compensation panel that examined Ms. Jones noted that she had a fairly normal range of motion. That same panel, however, noted weakness on the left and slight wasting of the lateral calf muscles and positive straight leg tests. The panel concluded, however, that its findings would

---

[17] *See Fisher Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

not preclude Ms. Jones from performing substantial gainful activity on a consistent basis.

This court agrees that the ALJ's finding of no documented positive straight leg tests is not supported by substantial evidence. However, as to the motor loss and muscle weakness, this case presents "the not uncommon situation of conflicting medical evidence," a situation in which the trier of fact has the duty to resolve the conflict.[18]  The court cannot say that given the weight the ALJ's properly gave to medical opinions that his finding of no evidence of documented muscle weakness is not supported by substantial evidence.

Ms. Jones argues that the ALJ's decision should be reversed because he did not give proper weight to the opinion of another treating physician, Dr. Hood, and a nurse practioner, Kathleen Thomas. The ALJ must give substantial weight to a treating physician's opinion regarding a claimant's status.[19]  Good cause is required for refusing to give such weight to a treating physician's opinion.[20]

Ms. Jones emphasizes that Dr. Hood noted that Ms. Jones is "quite disabled." However, an opinion that a person is disabled within the meaning of the Social Security Act is reserved to the Commissioner.[21]  And Ms. Jones fails to note, among other things, that Dr. Hood opined that Ms. Jones' straight leg tests were negative. Additionally, the ALJ noted that none of Ms. Jones' treating physicians opined that she could not perform a restricted range of unskilled sedentary

---

[18] *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) quotations and citation omitted).

[19] *See Hamlin v. Barnhart*, 3567 F.3d 1208, 1215 (10th Cir. 2004).

[20] *See id.* at 1215.

[21] 20 C.F.R. § 404.1527(e).

activities.  Thus, Ms. Jones' contention that the ALJ did not consider Dr. Hood's opinion is without merit.

Ms. Jones notes that Dr. Hood's opinion is supported by Ms. Thomas' opinion that she was unable to work.  But the ALJ appropriately indicated that Ms. Thomas as a nurse practioner was not an acceptable medical source.[22]  Although SSA regulations also provide that nurse practioner opinions may be used to show the severity of the individual's impairment and how it affects ability to function,[23] the ALJ considered Ms. Thomas' opinion, but found that it was unsupported by the objective medial evidence.

Finally, Ms. Jones also contends that the ALJ's mere statement that impairments independently or combined do not *equal* Listing 1.04(A) is insufficient.  The Commissioner responds that the ALJ's findings at steps four and five provide a proper basis for upholding the ALJ's finding at step three.[24]  Ms Jones responds only that the findings at steps four and five are not supported by substantial evidence.  Although the ALJ's finding is conclusory, the court concludes that the ALJ's findings at steps four and five are supported by substantial evidence. Accordingly, the court concludes that the ALJ's finding at step three is supported by substantial evidence.

### III. The ALJ's RFC Finding Is Supported by Substantial Evidence.

Ms. Jones makes two challenges to the ALJ's RFC finding.  First, Ms. Jones contends

---

[22] 20 C.F.R. § 404.1513(a).

[23] 20 C.F.R. § 404.1513(d); SSR 06-03p.

[24] *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

that the ALJ's finding that her testimony about her pain and limitations was not credible is not supported by substantial evidence because the ALJ failed to correctly apply relevant factors and explain what weight he gave to Ms. Jones' testimony. The Tenth Circuit requires a claimant to prove by "objective medical evidence the existence of a pain-producing impairment that could reasonably expected to produce disability."[25] The claimant must then show a "loose nexus" between the impairment and the claimant's pain allegations to determine whether the pain is disabling.[26] In assessing a claimant's credibility, the ALJ should consider:

> 1.[t]he individual's daily activities; 2.[t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4.[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5.[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6.[a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7.[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[27]

Additionally, credibility findings should be "closely and affirmatively linked to substantial evidence and not just conclusion in the guise of findings."[28]

The objective medical evidence in this case includes a CT scan, MRI reports, and x-rays that show spinal disorders. And Ms. Jones also had positive straight leg tests. However, in

---

[25] *Hamlin v. Barnhart*, 365 F.3d 1028, 1220 (10th Cir. 2004).

[26] *Id.*

[27] *Id.* at 1220 (alterations in original) (quotations and citation omitted).

[28] *Id.; see also Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000) (noting Tenth Circuit does not require a formalistic factor-by-factor analysis so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility).

2003, Dr. Braun found that Ms. Jones had full muscle strength in all groups, normal response to prick and light touch, and her reflexes were symmetric.  She had normal range of motion except for back forward flexion limited to eighty degrees and normal neurologic function.  In 2004, the workers' compensation panel found that she had fairly normal range of motion and no tenderness, slight discomfort on compression, with no significant pain reported, and her dorsal spine was not remarkable.  The sciatic notches were not tender but there was slight tenderness over the coccyx.  There was weakness on the left and slight wasting of lateral calf muscles.  Thus, some evidence indicates a pain-producing impairment.  But even assuming that this objective medical evidence indicates a pain-producing impairment, substantial evidence supports the ALJ's decision to not fully credit Ms. Jones' testimony regarding her pain and limitations.

     Contrary to Ms. Jones' argument, in assessing Ms. Jones' credibility the ALJ considered evidence related to the relevant factors.  The ALJ considered Ms. Jones daily activities, specifically, that she does some stretching exercises, reads, bathes, attends hour-long college classes twice a week, makes quick trips to the grocery store, picks up her child from school, prepares dinner, loads the dishwasher, does a load of laundry each week, but lies on her couch most of the day.  The ALJ also noted Ms. Jones' testimony about her pain level and functional limitations.  The ALJ further noted that she attended physical therapy but quit because it was not helping appreciably and that she takes medication and does not experience side effects from the medication.  The ALJ then explained that he did not discount all of Ms. Jones' complaints.  But her treating physicians did not place any functional restriction on her activity that would preclude restricted sedentary work activity and her daily activities were consistent with performance of

such work.  Further, objective medical evidence from Dr. Braun in September 2002 and Dr. Mooney in April 2003 indicated that she exaggerated her symptoms.  The ALJ also noted inconsistencies.  For example, Ms. Jones asserted incontinence was not reproducible by testing, and Dr. Braun noted that a workers' compensation videotape showed her operating at a high-level of functioning with apparently minimal limitations, which was inconsistent with his observations of Ms. Jones.

Ms. Jones argues that ALJ failed to acknowledge that the workers' compensation panel reviewed the tape and noted that she was limited in functioning.  However, the panel's conclusion that Ms. Jones is limited in function is fully consistent with the ALJ's ultimate determination that Ms. Jones can perform a restricted range of sedentary work.

Finally,  Dr. Burgoyne's opinion that Ms. Jones was not malingering during his psychological examination of her in 2004 does not contradict that she may have exaggerated her symptoms before Dr. Braun in 2002 and Dr. Mooney in 2003.  In this case, the ALJ had specific, legitimate reasons for not fully crediting Ms. Jones' testimony regarding her pain and limitations and therefore, the ALJ appropriately did not give Ms. Jones' testimony controlling weight.

Second, Ms. Jones contends that the ALJ's hypothetical question to the vocational expert did not adequately reflect her mental impairments by disregarding credible evidence of her post-traumatic stress disorder, eating disorder not otherwise specified, partner relational problems, and major depressive disorder in determining her residual functional capacity.  The regulations require that if a severe medical impairment exists *all medically determinable impairments* must

be considered in the remaining steps of the sequential analysis.[29]  The ALJ did not incorporate Ms. Jones' mental impairments in steps four and five.  However Ms. Jones points to no evidence that indicates that Ms. Jones' diagnoses had a vocational impact.  In short, the court cannot say that the ALJ's failure to incorporate Ms. Jones' diagnosed mental impairments lacks substantial support in the record.[30]  Accordingly, the court concludes that the ALJ's RFC determination is supported by substantial record evidence.

### V.    The ALJ's Determination that Ms. Jones can Perform a Limited Range of Sedentary, Unskilled Work is Supported by Substantial Evidence.

The ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations that the ALJ has found.[31]  This burden may be met through vocational expert testimony.[32]  In this case, the vocational expert testified that an individual with Ms. Jones' RFC and profile could perform unskilled, sedentary jobs of a telephone clerk and charge account clerk and that these jobs are available in sufficient numbers in the economy.

Ms. Jones contends that the ALJ's hypothetical question to the vocational expert did not adequately reflect her physical impairments.  She contends that the SSA regulations provide that

---

[29] 20 C.F.R. § 404.1523.

[30] *See Whitney v. Barnhart*, 60 Fed. Appx. 266, 268-69 (10th Cir. 2003) (concluding ALJ properly omitted mental impairments from hypothetical to vocational expert where no doctor had ever stated that claimant could not cope with stresses that accompany employment).

[31] *See Haddock v. Apfel*, 196 F.3d 1084, 1086 (10th Cir. 1999).

[32] *See, e.g., Thomas v. Barnhart*, 147 Fed. Appx. 755, 758 (10th Cir. 2005).

sedentary work requires the ability to sit for six hours in an eight-hour work day.[33]  They further provide that an individual who requires a sit/stand option is not functionally capable of doing the prolonged sitting contemplated in the definition of sedentary work.[34]  Ms Jones contends that when all of Ms. Jones' severe impairments were included in the hypothetical, the vocational expert testified that there were no jobs available but the ALJ ignored that testimony.  However, an ALJ is required to include in her hypothetical only "impairments and limitations that are borne out by the evidentiary record."[35]  The physical limitations that the ALJ relied on in framing her hypothetical are those that were supported by substantial evidence in the record.  Additionally, as noted above, the ALJ found that Ms. Jones' treating physicians did not place any functional restrictions on her activities that would preclude sedentary work activity with restrictions.

Ms. Jones also notes that a sedentary RFC represents a significantly restricted range of work.[36]  However, a finding that an individual has ability to do less than a full range of sedentary work does not necessarily equate with a disability finding.[37]  Thus, even though the ALJ concluded that Ms. Jones could not perform past work, the ALJ properly considered whether she could do work available in the national economy.[38]

---

[33] *See* SSR 83-10.

[34] *See* SSR 83-12.

[35] *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (citation omitted).

[36] *See* SSR 96-9P.

[37] *See id.*

[38] *See id.*

Ms. Jones maintains that the full range of sedentary work was significantly eroded and therefore the ALJ should have found that she was disabled.[39] However, Ms. Jones' argument is based largely upon Dr. Hood's summary conclusion that Ms. Jones is "quite disabled" and Ms. Thomas' opinions that the ALJ properly rejected as medical evidence. The court therefore concludes that the ALJ's determination at step five is supported by substantial evidence.

## CONCLUSION

Because substantial evidence supports the decision to deny Ms. Jones disability benefits, the court denies the motion to reverse or remand. The court finds no hearing is necessary, and denies Ms. Jones' motion for a hearing. The court clerk is directed to close the case.

SO ORDERED.

DATED this 28th day of March, 2007.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge

---

[39] *See id.; Saiz v. Barnhart*, 392 F.3d 397, 400 (10th Cir. 2004).